UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

RALPH E. ANDERSON, JR. and
TERESA CRISTINA TAMBURI
ANDERSON,

Debtors.
_____/

UNISTAR PLASTICS, L.L.C. and
NATION PLASTICS, INC.,

Plaintiff,

vs.

RALPH ERIC ANDERSON, JR.,

Defendant.
_____/

Case No. 6:04-bk-05016-ABB
Chapter 7

Adv. Pro. No. 6:04-ap-00169-ABB

**FILED**

OCT 2 5 2006

CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION

## MEMORANDUM OPINION

This matter came before the Court on the Complaint to Deny Discharge and to Except Debt from Discharge ("Complaint")[1] filed by Unistar Plastics, L.L.C. and National Plastics, Inc., the Plaintiffs herein, against Ralph Eric Anderson, Jr. ("Mr. Anderson"), the Defendant and Debtor herein (the "Debtor"). The Plaintiff seeks in its Complaint to have the Debtor's discharge denied pursuant to 11 U.S.C. § 727(a) and to have a debt in the amount of $120,355.77 deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(6).[2] A final evidentiary hearing on the Complaint was held on September 14, 2006. A representative of the Plaintiff and Plaintiff's counsel appeared at

---

[1] Doc. No. 1.
[2] Plaintiff named the Debtor's wife, Teresa C. Anderson a/k/a Teresa Tamburi Anderson, as a co-defendant in the Complaint. She was dismissed as a defendant on April 7, 2006 (Doc. Nos. 54, 55).

the hearing. The Court makes the following Findings of Fact and Conclusions of Law After reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

Unistar Plastics, L.L.C. and its subsidiary National Plastics, Inc. (collectively, the "Plaintiff") manufacture plastic bags used by retail businesses, such as grocery stores. The Plaintiff is located in New Orleans, Louisiana and has approximately twelve employees. It engages individuals throughout the country to sell its bags. Plaintiff engaged the Debtor as an independent contractor to sell its bags in the Orlando area. The Plaintiff's president and the Debtor had known each other personally for many years prior to his engagement.

The Plaintiff provided plastic bags to the Debtor on consignment allowing him to return any unsold bags. The parties did not execute a written agreement defining the terms of their business relationship. They communicated almost exclusively by telephone. The Plaintiff delivered plastic bags to the Debtor by the case, with each case ranging in price charged to the Debtor from $3.00 to $25.00 depending on the type and quality of the bags. The bags included bags with handles, printed bags, and factory seconds with misprints or inferior handles. The volume of bags in each case varied. The Plaintiff would issue invoices marked "Consignment" to "Ralph Anderson" and "Ralph Anderson, Jr." at the Debtor's mailing address.[3] The Debtor was to remit the invoice price to the Plaintiff on a "Net 30" term and would sell the bags to his customers at a marked-up price. He was entitled to keep whatever profit he obtained.

---

[3] Doc. No. 66, Plaintiff's Exh. No. 3.

2

The Plaintiff shipped plastic bags to the Debtor at his warehouse locations and issued invoices to him. The Debtor sold some bags on account with customers, for cash or checks, and for barter (he would exchange bags for food items and merchandise). He operated sometimes using the business names WWW.BAGS.BZ and N.C.M. The warehouse spaces were rented by the Debtor using the business names. He had been in the bag selling business since 1996. The Plaintiff was his largest supplier. The Debtor did not keep careful records of his sales or business transactions.

The Debtor defaulted on his payment obligations to the Plaintiff. The last payment received by the Plaintiff from the Debtor was on December 11, 2002. He contacted the Plaintiff's president in 2003 explaining he had been injured in a car accident in Orlando and could not work, but would make good on the invoices when he recovered. The Plaintiff assisted the Debtor in finding a doctor and a personal injury attorney.

The Plaintiff continued to ship bags to the Debtor throughout 2003 hopeful he would regain his financial footing. The Plaintiff shipped bags to him in April, July, August, and October 2003. The Debtor received more than 9,650 cases in 2003 and failed to pay for the bags.[4] A balance of $120,355.87 remains outstanding on the invoices.[5] The bags delivered in 2003 would have a retail value of substantially more than $120,355.87.

The Debtor and his wife filed a joint Chapter 7 case on April 30, 2004 ("Petition Date"). The Debtor lists Nation Plastics Inc. as an unsecured creditor with an undisputed

---

[4] The quantity of cases shipped in August 2003 is unknown because Invoice N12819 for the amount of $22,552.50 is illegible.

[5] The Plaintiff instituted a state court lawsuit against the Debtor, seeking replevin of plastic bags, open account damages and damages for conversion. A default judgment was entered against the Debtor by the state court.

claim of $87,977.00 for "Consumer Credit" in Schedule F of his Schedules.[6] He lists "AF Unistar Plastics & Na" as an unsecured creditor with an undisputed claim of $120,355.87 and "Unistar Plastics LLC" as an unsecured creditor with an undisputed claim of $9,030.00 for "Consumer Credit" in Schedule F. The Debtor lists unsecured debts totaling $409,611.87 in Schedule B.

The Debtor has not filed any response in this case nor made an appearance. The Debtor appeared for two post-petition depositions conducted by the Plaintiff. The Plaintiff served three document requests on the Debtor and he produced virtually no documentation in response to the document requests. The Debtor testified he had fifty cases of bags supplied by the Plaintiff in his storage unit at the time of the deposition, he had sold all other bags, and had returned no bags to the Plaintiff.[7] He was unable or unwilling to disclose his customer list, the individuals' full names and addresses who allegedly have possession of his business records, to whom he sold the 2003 shipments of Plaintiff's bags, and what proceeds he received. He failed to produce sales receipts, income receipts, ledgers, journals, books or any documents reflecting sales of bags from 2001 through 2006. The Debtor did not explain how he used the sale proceeds.

The Plaintiff conducted an investigation and discovered the Debtor had purchased a tour bus and was in the business of conducting tours. The Debtor admitted he was getting back into the tour business.[8] The Plaintiff's representative inspected the Debtor's warehouse space and found bags, but none of the bags were the Plaintiff's bags. The Plaintiff's representative interviewed the Debtor's customers, but was unable to

---

[6] Main Case Doc. No. 1.
[7] Doc. No. 35, December 21, 2004 deposition of Debtor at pp. 50-51.
[8] Doc. No. 34, November 30, 2004 deposition of Debtor at p. 19-20 ("So they send me these tourists form Brazil, and I'm driving them and translating to help them go to the attractions. Sometimes I drive them to Miami.").

determine what happened to the bags. The Plaintiff was unable to ascertain in whose name the vehicle is titled.

The Plaintiff alleges it suffered willful and malicious injury as a result of the Debtor's intentional actions. The Plaintiff seeks to have the debt of $120,355.87 deemed nondischargeable. A plaintiff's burden of proof in a nondischargeability action is substantial. The Plaintiff must establish the Debtor's specific intent in order to prevail on its nondischargeability count. The Plaintiff has not established the Debtor acted with the specific intent to harm the Plaintiff and that the debt arises from a willful and malicious injury caused by the Debtor.

The Plaintiff contends the Debtor should be denied a discharge because he knowingly and fraudulently made material misrepresentations in his bankruptcy papers regarding the sale of the plastic bags, concealed or failed to keep business records, intentionally defrauded the Plaintiff, and failed to explain satisfactorily the loss of assets.

The Debtor's bankruptcy papers are replete with failures to disclose material information, inconsistencies, and inaccurate information. He did not list any business inventory or plastic bags as assets in Schedule B, nor did he list any transfers or losses of inventory in his Statement of Financial Affairs.[9] He listed balances of $0.00 for his checking account and $50.00 for his savings account in Schedule B. He failed to disclose his personal injury cause of action in Schedule B or any lawsuits in his Statement of Financial Affairs relating to the personal injury matter. He lists gross and net monthly income of $2,000.00 per month from operation of a business, but provides no substantiating documentation as required by Schedule I. Schedules I and J reflect no tax deductions or expenses.

---

[9] Main Case Doc. No. 1.

The Debtor listed "None" for stock and interests in incorporated and unincorporated businesses in Schedule B, but names WWW.BAGS.BZ as his employer in Schedule I. He lists three businesses in Question 18 of his Statement of Financial Affairs, but states WWW.BAGS.BZ terminated on January 1, 2002. The Debtor, as evidenced by Plaintiff's invoices and his deposition testimony, continued to conduct business as WWW.BAGS.BZ and N.C.M. throughout 2003.

The Debtor states in his Statement of Financial Affairs he earned $552.00 in 2002 and $0.00 in 2003 from operation of a business. These disclosures are wholly inconsistent with the Debtor's deposition testimony and the Plaintiff's transactions with the Debtor. He lists "None" for gifts and losses. Nowhere in his Statement of Financial Affairs does he explain what happened to the bags shipped to him by the Plaintiff in 2003 or the income derived from the sale of the bags. The Debtor has not amended his Schedules or Statement of Financial Affairs.

The Debtor's income tax returns for 2002 and 2003, which are joint returns and were filed nine days *after* the Petition Date, reflect the exact income figures contained in his Statement of Financial Affairs. The Debtor refused to answer questions or gave insufficient answers regarding the timing of the filing of his returns and the basis of the income figures.[10] The Debtor admitted he forged his wife's name on the returns.[11] He admitted he filed the joint returns without relying on any sale receipts or documentation.[12]

The Debtor has failed to fulfill his most basic and important obligations as a debtor. He failed to disclose material information in his bankruptcy papers relating to his

---

[10] December 21, 2004 transcript at pp. 41-42.
[11] Id. at p. 49.
[12] Id. at p. 26, lines 13-18.

income, assets, business transactions, and the disposition the Plaintiff's bags. He failed and, in some instances refused, to provide relevant, important information to the Plaintiff. He failed to preserve important information regarding his financial condition and business transactions. He failed to account for assets worth at least $120,355.87. No justification exists for the Debtor's failure to keep and preserve his financial records. The Debtor has failed to explain satisfactorily his loss of his assets, namely Plaintiff's bags sold to him on consignment in 2003. The Debtor is undeserving of a discharge. His discharge is due to be denied.

## CONCLUSIONS OF LAW

The Plaintiff seeks denial of the Debtors' discharge pursuant to 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), and (a)(5) and challenges the dischargeability of the debt in the amount of $120,355.87 pursuant to 11 U.S.C. § 523(a)(6).

The party objecting to a debtor's discharge or the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); Fed. R. Bankr. P. 4005 (2005). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. In re Hunter, 780 F.2d 1577, 1579 (11th Cir. 1986); In re Bernard, 152 B.R. 1016, 1017 (Bankr. S.D. Fla. 1993). "Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system." 4 COLLIER ON BANKRUPTCY ¶523.05, at 523-24 (15th ed. rev. 2005).

## *11 U.S.C. § 523(a)(6)*

Section 523(a)(6) provides a discharge pursuant to § 727 does not discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (2005). The exception of a debt from discharge pursuant to § 523(a)(6) requires a plaintiff to establish by a preponderance of the evidence the debtor deliberately and intentionally injured the creditor or creditor's property by a willful and malicious act. In re Howard, 261 B.R. 513, 520 (Bankr. M.D. Fla. 2001). The United States Supreme Court ruled in Kawaauhau v. Geiger that in order to establish the requisite willful and malicious intent of § 523(a)(6), a plaintiff must establish the injury was intentional—that the debtor intended the consequences of his or her act. The Supreme Court explained, because "willful" modifies "injury" in § 523(a)(6), nondischargeability requires conduct that inflicts an injury intentionally and deliberately, "not merely . . . a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61-2, 118A S. Ct. 974, 140 L. Ed. 2d 90 (1998).

The Plaintiff contends the Debtor converted the plastic bags and such acts were willful and malicious, causing injury to the Plaintiff. The Plaintiff has not presented evidence conclusively establishing the Debtor transferred, sold, or converted the plastic bags with the intention to inflict willful and malicious injury upon the Plaintiff. The Plaintiff has not established the Debtor took or engaged in any action that meets the willful and malicious standard of § 523(a)(6), as defined by the Supreme Court in Geiger.

## *11 U.S.C. § 727(a)*

Section 727(a) of the Bankruptcy Code sets forth a debtor shall be granted a discharge unless certain abuses have been committed by the debtor. A discharge will be

denied where a debtor has, among other things: (i) within one year of the petition date and with the intent to hinder, delay, or defraud a creditor, transferred, removed, destroyed, mutilated, or concealed property of the debtor or the estate (11 U.S.C. § 727(a)(2)); (ii) concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information from which the debtor's financial condition might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case (11 U.S.C. § 727(a)(3)); (iii) knowingly and fraudulently, in or in connection with the case, made a false oath or account (11 U.S.C. § 727(a)(4)(A)); or (iv) failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities (11 U.S.C. § 727(a)(5)).

The Plaintiff seeks a denial of discharge pursuant to each of these four provisions in Counts I through IV of its Complaint. The Plaintiff has not established the elements of §§ 727(a)(2)(A) or 727(a)(4). The relief requested in Counts I and III shall be denied.

The purpose of §727(a)(3) is to make certain that the creditors and the trustee are given sufficient information to understand the debtor's financial condition. 6 COLLIER ON BANKRUPTCY ¶727.03[3][a], at 727-31 (15th ed. rev. 2004). To qualify as sufficient, the debtor's presented records must enable his creditors to ascertain his present financial condition and to follow his business transactions for a reasonable period of time in the past. In re Juzwiak, 89 F.3d 424, 427 (7th Cir. 1996). Section 727(a)(3) does not require a full accounting of every business transaction, but "there should be some written records, orderly made and preserved, from which the present and past financial condition of the debtor may be ascertained with substantial completeness and accuracy." In re Sowell, 92 B.R. 944, 947 (Bankr. M.D. Fla. 1988). Each case must be determined on its

own facts. Milam, 172 B.R. at 375. The standard applied to a debtor who is involved in business may be more stringent than the standard imposed on a debtor who is an unsophisticated wage earner. Id.; Meridian Bank v. Alten, 958 F.2d 1226, 1231 (3d Cir. 1992).

Once the objecting party makes an initial showing that a debtor failed to maintain or preserve adequate records from which his financial condition or business transactions could be ascertained, the burden then shifts to the debtor "to explain satisfactorily the loss." In re Chalik, 748 F.2d 616, 619 (11th Cir. 1984); 6 COLLIER ON BANKRUPTCY ¶727.03[4], at 727-37. The debtor carries the burden of persuasion to explain the failure to keep records because the information necessary to establish such an excuse is generally in the possession of the debtor. Meridian Bank v. Alten, 958 F.2d at 1233. A debtor must explain his or her losses or deficiencies of documentation in such a manner to convince the Court of good faith and businesslike conduct. Id. "The plain language of section 727(a)(3) places the burden on the debtor to justify the lack of adequate record keeping." Id. at 1234.

The Debtor was to produce his books and records to the Plaintiff pursuant to three subpoenas duces tecum. The subpoenas called for the production of items relating to the Debtor's personal and business records, including sales receipts, income receipts, tax returns, W-2s, records of storage units, and all records relating to all trade or barter of plastic bags. The Debtor failed to produce sales receipts, income receipts, ledgers, journals, books or any documents showing sales of plastic bags from 2001 to 2006. The Debtor has never produced any receipts or any evidence as to the true and accurate sales of plastic bags to his customers. He admitted he sold the Plaintiff's bags, but has failed

to provide an accounting of the sales, the persons who purchased the bags, and what he did with the sales proceeds. The Debtor has failed to fully and accurately disclose his business dealings and financial standing in his bankruptcy papers. The Debtor has not accounted for inventory having a value of at least $120,355.87 or the proceeds of sale of the inventory.

The Debtor has failed to keep or preserve books, documents, records, and papers from which his financial condition and business transactions might be ascertained. No justification for the Debtor's failure to keep or preserve such records exists. The Debtor has failed to explain satisfactorily the loss of the bags or deficiency of assets to meet the Debtor's liabilities. The Plaintiff has established the necessary elements of §§ 727(a)(3) and 727(a)(5) for denial of discharge.

The Debtor is not entitled to a discharge and a discharge shall be denied pursuant to §§ 727(a)(3) and 727(a)(5). A separate judgment in favor of the Plaintiff and against the Debtor consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 25 day of October, 2006.

_____
ARTHUR B. BRISKMAN
United States Bankruptcy Judge